## Richmond

## G. FRANK BAYLOR V. J. EARL HOOVER.

### November 17, 1921.

1. REAL ESTATE BROKERS—*Action for Commissions—Parol Evidence Explaining Contract of Sale—Case at Bar.*—In an action by a real estate broker for commissions, plaintiff introduced a contract of sale between defendant and a husband and wife. Plaintiff and other witnesses were allowed to testify in contravention of the contract of sale that the husband and wife were not joint purchasers, that it was never proposed that the wife should be a purchaser, and that while her name appeared in the contract as a joint purchaser with her husband, it was put there merely to indicate that when the deed was made, the same should be made to the husband and wife jointly.

   *Held:* That the reception of this testimony was not error.

2. REAL ESTATE BROKERS—*Action for Commissions—Parol Evidence Explaining Contract of Sale—Case at Bar.*—In the instant case the broker did not offer the contract of sale apparently between defendant and a husband and wife for which he claimed commissions, as a complete, valid contract, according to its apparent effect, claiming under one feature and repudiating or contradicting another, but offered it as the sole and exclusive contract of the husband according to its real meaning, purpose and effect; and it was not to the prejudice of the broker's rights that in another action defendant undertook to hold both the husband and wife under the writing, and induced the broker to employ counsel in aid of that effort, and even to pay a part of counsel's fee.

3. REAL ESTATE BROKERS—*Action for Commissions—Evidence Sufficient to Support Verdict.*—In the instant case, an action by a real estate broker for commissions, the evidence satisfied the jury that the broker had produced a purchaser ready, willing, and able to buy on terms authorized by the owner, or acceptable to him, and that a valid contract had been entered into between purchaser and defendant.

   *Held:* That, as the case was submitted to the jury under instructions that fully and correctly set out the law, a verdict of the jury for plaintiff resolved all issues of fact in his favor; and

conceding that credence should be given to the testimony for the plaintiff, the testimony fully sustained the verdict.

4.   APPEAL AND ERROR—*Second Appeal—Law of the Case.*—On the first appeal, in an action by a real estate broker for commissions, the following statement appeared in the opinion of the court: "In point of fact the farm was never sold, though the evidence shows defendant did all in his power to consummate the sale that plaintiff undertook to negotiate." On second appeal defendant contended that this was decisive on the merits of the controversy. On the first appeal the judgment in favor of the broker was reversed, on the ground that a peremptory instruction was granted by the court, directing a verdict for the plaintiff, and that, as the evidence presented conflicting theories of the case, defendant was entitled to an instruction submitting his theory to the jury.

*Held:* That the statement quoted from the opinion on the first appeal was not to be considered as controlling on the second appeal as a determination of fact.

5.   APPEAL AND ERROR—*Second Appeal—Law of the Case.*—On a second appeal where the judgment on the first trial had been reversed for error in the instructions and the case remanded, defendant claimed that a statement in the opinion of the court on the first appeal was decisive of the case on the merits of the controversy. In view, however, of the fact that the case was remanded to be tried on the merits, it seems in the highest degree unlikely that the court, in a statement not necessary to have been made, should have undertaken to decide the case against the plaintiff on the very question of fact directed to be submitted to the jury under instructions that would properly present the opposing theories of the litigants.

Error to a judgment of the Corporation Court of the city of Staunton in an action of assumpsit. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Jos. A. Glasgow,* for the plaintiff in error.

*Timberlake & Nelson,* for the defendant in error.

SAUNDERS, J., delivered the opinion of the court.

This is a writ of error to a judgment of the Corporation Court of the city of Staunton. In the proceedings in the corporation court Hoover was plaintiff and Baylor defendant. The question for determination is, whether upon the law and facts in issue Hoover, a real estate agent in Staunton, is entitled to recover commissions from Baylor under the terms of the following contract of authorization to sell Baylor's farm:

"I hereby authorize J. Earl Hoover to sell my property as listed above, until otherwise notified in writing. And if sold, I agree to pay said J. Earl Hoover a commission of (5) per cent on the total amount of the sale. I reserve the right to sell myself, or give it to any other person to sell.

"G. Frank Baylor."

It appears that after Baylor placed his farm in the hands of Hoover for sale, the latter became very active, and after interviewing various parties, finally succeeded in interesting one Charles T. Carson. Hoover and Baylor give very different accounts of what followed in the negotiations between the parties, but this controversy was submitted to a jury, and they appear to have given credence to Hoover and his witnesses. According to the testimony for the plaintiff, after Hoover had interested Carson, he took him to see Baylor, and the three drove out to see the latter's farm. After a thorough examination of the place, Carson said that the farm was what he was looking for, and "he was willing to buy it, provided he could get such terms as he would have to have." Thereupon he and Baylor talked the matter over, and came to a full and complete agreement upon the terms of sale. The parties returned to town, and an attorney of repute was employed to draw a contract. Mr. Baylor gave Mr. Kennedy, the attorney, the

necessary data, and the contract was drawn up accordingly. The contract begins as follows: .

"This contract of sale, made and entered into in triplicate the third day of January, 1916, by and between G. Frank Baylor, of Augusta county, Va., of the first part, and Charles T. Carson and Helen Carson, his wife, of West Virginia, parties of the second part; Witnesseth: That for and in consideration of the consideration hereinafter named, the said party of the first part doth hereby sell unto the parties of the second part, and the parties of the second part do hereby purchase from the said party of the first part, that certain farm," etc.

In the body of the contract are various references to "the parties of the second part." The contract was signed as follows:

> "G. Frank Baylor (Seal)
> Charles T. Carson (Seal)
> Helen A. Carson,
>     per C. T. Carson (Seal)."

Following the execution of this contract, Carson paid Baylor five hundred dollars. Carson returned to West Virginia to make his arrangements to take possession of the place which he had purchased. Later his wife visited the farm, and was very much dissatisfied with what she saw. Thereafter Carson refused to carry out the contract, or to accept a deed from the vendor. All efforts to induce compliance on his part having failed, Baylor brought an action for damages against Carson and wife for failure to carry out the contract. Under an instruction of the court, Mrs. Carson was relieved from liability, but Baylor recovered a judgment against the husband for fifteen hundred dollars. This judgment proved unavailing, Carson having disposed of his real and personal property in anticipation of an adverse verdict. Upon the termination of the proceedings

against Carson, Hoover called upon Baylor for the balance of his commissions, having received only fifty dollars on account of same. Baylor refused to pay this claim, alleging that Hoover had not effected a sale. Thereupon, Hoover sued Baylor and recovered a verdict of $700, subject to a credit of fifty dollars, as commissions for negotiating the sale of the farm in question. A writ of error was awarded to the judgment on this verdict, and the same was reversed for errors of law, and remanded for a new trial. On the second trial the jury returned a verdict for the plaintiff for five hundred and fifty dollars. The judgment on this verdict is under review in the instant case.

Baylor, the plaintiff in error, assigns several errors:

[1, 2] First and second: The trial court erred in allowing the plaintiff and other witnesses to testify in contravention of the contract of sale which indicated that Charles T. Carson and Helen, his wife, were joint purchasers of the Baylor farm. These witnesses were allowed to testify that Mrs. Carson was not a purchaser, and was never proposed as such, and that while her name appeared in the contract as a joint purchaser with her husband, it was put there merely to indicate that when the deed was made, the same should be made to the said Carson and wife jointly.

Third: The court erred in overruling the motion to set aside the verdict on the ground that it was contrary to the law and the evidence, and for the admission of improper evidence.

The issue of fact submitted to the jury in the instant case under proper instructions, was whether the plaintiff, as agent of Baylor, produced to the latter a purchaser ready, willing and able to buy his farm on terms acceptable to him, and a valid contract was made between vendor and vendee.

The court instructed the jury by instruction No. 1 for the plaintiff as follows:

"The court instructs the jury that a real estate agent in order to be entitled to his commissions must procure and produce to the owner a purchaser who is ready, willing and able to buy on terms authorized by the owner, or acceptable to him. When the real estate agent has done this, and the owner of the land has entered into a valid contract with such purchaser, the duty of the real estate agent is performed, and he is entitled to his commissions." The evidence for the plaintiff appears to have satisfied the jury that such a purchaser had been produced by Hoover, and a valid contract had been entered into between said purchaser and Baylor. As a part of his evidence in his action for commissions, Hoover introduced the contract between Baylor and Carson. On the face of this contract Carson and wife were joint purchasers, but Mrs. Carson had successfully resisted the attempt to charge her with liability in the action of Baylor against Carson and wife, *supra*, on the ground that her husband had no authority, under seal or otherwise, to sign her name to the contract of sale of the Baylor farm, as a joint purchaser.

The contention of the plaintiff, Hoover, in his action against Baylor, was that C. T. Carson was the sole purchaser of the Baylor farm, and was offered to and accepted as such by Baylor; that the name of the wife was inserted by Kennedy, the draughtsman, at Carson's instance, not as a joint purchaser, but merely to indicate that the deed was to be made to him and his wife jointly; that her name was included in the contract under these circumstances, and for the purpose indicated, and that Baylor was present and heard what passed between Kennedy and Carson in the foregoing connection.

When Hoover undertook to submit his testimony to show that the contract *supra* was a contract of sale of C. T. Carson only, and that it was intended and understood by Carson and Baylor that Carson alone was the purchaser of

the Baylor farm, the defendant (Baylor) objected on the ground that this evidence was not competent; that a person could not claim under an instrument without confirming it, that is to say he cannot at once accept and reject the same instrument. The principle of law advanced is sound and controlling in an appropriate case. But Hoover was not introducing the contract for its apparent, but for its real meaning and effect. Prior to that time it had been judicially ascertained in a controversy between Baylor and Carson and wife that the instrument was a valid and binding contract as to the husband, though not operative as to the wife. It was the contention of Hoover that he had introduced Carson, and Carson only to Baylor as a purchaser; that the terms of a sale had thereupon been agreed upon and reduced to written form, and that the paper introduced was Carson's contract, valid as to him, and accepted as such by Baylor. If Carson was the sole purchaser, if the contract contained the terms of sale agreed on between Carson and Baylor, and if it was binding on the former, it was immaterial that Mrs. Carson's name had, with his (Baylor's) acquiescence, been inserted in the instrument under a misconception. Hoover relied upon, and introduced the Carson contract as he *understood it to be,* and as he *offered to prove it to be.* He was not a party to that contract. It is not to the prejudice of Hoover's rights that in another action Baylor undertook to hold both Carson and wife under the writing, and induced Hoover to employ counsel in aid of that effort, and even paid a part of counsel's fee. Hoover did not offer the contract as a complete, valid contract, according to its apparent effect, claiming under one feature, and repudiating or contradicting another, but offered it as the sole and exclusive contract of C. T. Carson according to its real meaning, purpose and effect. It is not considered that it was error in the trial court to allow the plaintiff (Hoover) to introduce this

contract and to permit him to prove that it was C. T. Carson's contract, and as such in all respects valid and binding. The testimony of Hoover and Kennedy in contravention of the testimony for the defendant establishes the following material contentions of the plaintiff—that he secured Carson, and Carson only, as a buyer; that he took Carson to Baylor; that Baylor showed his entire farm to Carson; that they agreed upon the terms of sale; that the three went to Kennedy's office to have the same reduced to writing; that Baylor gave Kennedy all of the data for drawing the contract; that Carson said that he wanted his wife's name inserted; that Kennedy thereupon asked him the following question: "Is your wife going to be one of the purchasers; if so, she must sign the contract;" that Carson replied, "No;" that Carson said that he wanted the deed to be made jointly to him and her; that Mrs. Carson's name was included in the contract under the foregoing circumstances, and, as Kennedy understood, as "a guide for drawing the deed, as Carson wanted it made;" that Baylor was present and heard what passed between Carson and Kennedy; that Carson's request to have his wife's name inserted, not as a purchaser, but as a guide when the deed came to be made, "was an unusual request, and as such impressed itself upon Kennedy."

It appears by implication in the record that at the time of his contract of purchase, Carson, who was a carpenter and contractor, had three thousand dollars in bank, and was the owner in his own name of a farm in Augusta county, subsequently sold for a recited consideration of two thousand dollars, and that Mrs. Carson was assessed with no property, real and personal, in Augusta county. It further appears that Baylor now has his farm, the cash payment of $500, less fifty dollars paid to Hoover, and a judgment for fifteen hundred dollars against Carson. This judgment may hereafter be enforced by proper proceedings

against Carson's Augusta farm, which Mrs. Carson admits was sold to her son, "to get it out of the way." Mrs. C. T. Carson, who was introduced by the defendant, stated among other things, that she had never authorized her husband by a power under seal to enter into a contract to buy the Baylor farm, or authorized, or empowered, him otherwise to buy said farm for her, and that she had nothing to do with the transaction.

The second assignment of error presents the same question of law raised by the first assignment. Hence, in overruling that assignment, as we do, substantial disposition is made of the second.

[3] The third assignment of error is that the trial court erred in failing to sustain the motion to set aside the verdict on the ground that it was contrary to the law and the evidence, and for the admission of improper evidence. Having held that the evidence to which objection was made was properly received by the court, the motion to set aside the verdict on the ground of the admission of improper evidence must of necessity be overruled. The case was submitted to the jury under instructions that fully and correctly set out the law of the case appropriate to the respective contentions of the litigants, and the issues of fact were resolved by the jury in favor of the plaintiff.

[4] Conceding that credence should be given to the testimony for the plaintiff, that testimony fully sustains the verdict of the jury. Plaintiff in error seems to think that the case of *Baylor* v. *Hoover,* 123 Va. 659, 97 S. E. 309, in which the judgment of the court in the first trial of this controversy was reversed, is in some way decisive of the instant case on the merits of the controversy of fact. The paragraph relied on and cited by plaintiff in error from the opinion in said case is as follows (Whittle, J., delivering the opinion) :

"Defendant (*i. e.,* Baylor) listed his farm for sale with the plaintiff at a named price, and 'if sold' agreed to pay him a commission of five per cent on the total amount of the sale. In point of fact the farm was never sold, though the evidence shows defendant did all in his power to consummate the sale that plaintiff undertook to negotiate."

The trial court was reversed in the case, *supra,* on two grounds:

First: On the ground that a peremptory instruction was granted by the court on request of the plaintiff, directing a verdict for the plaintiff on the basis of the latter's evidence. This action of the court was held to be fundamentally erroneous, in that the instruction given ignored defendant's theory of the case, and omitted all evidence tending to sustain it, such action being in contravention of the settled doctrine that an instruction which in substance directs a verdict must cover every phase of the case.

Second: On the ground that as the evidence presented conflicting theories of the case, each party was entitled to instructions submitting his theory to the jury. In addition to reversal the case was remanded for a new trial, "leaving the parties free at the next trial to request such instructions as they may be advised are proper in the case as then presented."

The statement cited from the opinion, to-wit: that "in point of fact the farm was never sold, though the evidence shows defendant (*i. e.,* Baylor) did all in his power to consummate the sale that the plaintiff undertook to negotiate," is not considered to be controlling in the instant case as a determination of fact.

Baylor endeavored to hold Mr. and Mrs. Carson as joint purchasers, but it was his not Hoover's contention that he (Hoover) had undertaken to negotiate a joint sale. The opinion refers to two theories of the case, and reversed the

trial court on the ground that it ignored one of them. The plaintiff's theory was that he had furnished a single buyer, C. T. Carson, who had been accepted by Baylor, and had entered into a valid binding contract. The theory of the defendant was that the plaintiff had produced joint purchasers, Mr. and Mrs. Carson, and that no valid, binding contract had been made with them. If the opinion *supra* referred to a joint sale, when it said the "farm was never sold, though defendant did all in his power to consummate the sale," the reference was correct, since a jury had ascertained in the case of *Baylor* v. *Carson and wife,* that the latter were not joint purchasers.

It would hardly seem that the opinion referred to the sale to C. T. Carson, relied upon by the plaintiff, when it made the statement that "the farm was never sold." The sale to Carson was the sale that the plaintiff insisted had been made. His right to recover commissions was based upon the establishment of that sale. Plaintiff's evidence on the first trial that he had produced Carson, and Carson only, as a purchaser, and that a contract had been agreed upon between the latter and Baylor, was apparently so convincing, and the evidence supporting a contrary view so negligible, that the trial court gave an instruction ignoring the defendant's theory. It was on this account that the trial court was reversed, and the case remanded in order that the opposing theories might be presented to the jury under adequate instructions.

[5] In view of the fact that the case was remanded to be tried on the merits, it seems in the highest degree unlikely that the court, in a statement not necessary to have been made, should have undertaken to decide the case against the plaintiff on the very question of fact directed to be submitted to the jury under instructions that would properly present the opposing theories of the litigants. If the Baylor farm "was never sold" to Carson, it followed as a matter of

course that Hoover would not be entitled to commissions. His claim to commissions rested on that sale. Briefly put, no sale, no commissions. If the case of *Baylor* v. *Hoover* is an adverse adjudication of Hoover's contention that a sale had been made to Carson alone, then there was really nothing to be tried when the case was remanded. The very crux of Hoover's case was that such a sale had been effected. A decision contrary to that contention was conclusive of his case. We do not regard this case as intending to afford a prejudgment of the facts in issue in the case in judgment, or as intending to take from the jury the right to determine whether the Baylor farm was sold to C. T. Carson, and a valid written contract of sale effected between the parties, thereby entitling the agent to his commissions.

On the whole, we are of opinion that the instant case was properly tried, and that there are no errors in the record. The action of the trial court will be affirmed.

*Affirmed.*